UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

LYNN PURPERO,

    Plaintiff,

  v.                                             Case No. 20-CV-10

ANDREW M. SAUL,
**Commissioner of Social Security,**

    Defendant.

---

## DECISION AND ORDER

---

Lynn Purpero seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits under the Social Security Act, 42 U.S.C. § 405(g). For the reasons below, the Commissioner's decision is affirmed.

## BACKGROUND

On October 18, 2015, Purpero filed an application for a period of disability and disability insurance benefits, alleging disability beginning September 30, 2015 (Tr. 17) due to degenerative disc disease, history of right hip replacement, history of left knee replacement, history of bilateral carpal tunnel surgery, and trigger finger release surgery (Tr. 21). Purpero's applications were denied initially and upon reconsideration. (Tr. 17.) Purpero filed a request for a hearing and a hearing was held before an Administrative Law Judge ("ALJ") on March 1, 2018. (Tr. 35–92.) Purpero testified at the hearing, as did Jacquelyn Wenkman, a vocational expert ("VE"). (Tr. 17.)

In a written decision issued August 28, 2018, the ALJ found that Purpero had the severe impairments of lumbar degenerative disc disease, history of right hip replacement, history of left knee replacement, history of carpal tunnel syndrome, left thumb osteoarthritis, and obesity. (Tr. 20.) The ALJ further found that Purpero did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "listings"). (*Id.*) The ALJ found that Purpero had the residual functional capacity ("RFC") to perform a reduced range of sedentary work. (Tr. 21.) Namely, she could occasionally climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs; frequently balance; occasionally stoop, kneel, crouch, or crawl; and frequently handle and finger with the bilateral upper extremities. (*Id.*)

The ALJ found that Purpero was capable of performing her past relevant work as a buyer/planner, as the work was actually performed. (Tr. 26.) As such, the ALJ found that Purpero was not disabled from her alleged onset date until the date of the decision. (*Id.*) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Purpero's request for review. (Tr. 5–10.)

## DISCUSSION

### 1. *Applicable Legal Standards*

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence,

remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

2. *Application to this Case*

Purpero argues that the ALJ improperly evaluated her subjective symptoms by misinterpreting evidence in the record. (Pl.'s Br. at 20, Docket # 20.) As a result of the improper subjective symptom evaluation, Purpero claims, the ALJ overstated her ability to handle and finger in the RFC and erroneously found that she could perform her past relevant work. (*Id.*)

The Commissioner's regulations set forth a two-step test for evaluating a claimant's statements regarding her symptoms. First, the ALJ must determine whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. SSR 16-3p. Second, if the claimant has such an impairment, the ALJ must evaluate the intensity and persistence of the symptoms to determine the extent to which they limit the claimant's ability to work. *Id.* If the statements are not substantiated

by objective medical evidence, the ALJ must evaluate the intensity, persistence, and limiting effects of the alleged symptoms based on the entire record and considering a variety of factors, including the claimant's daily activities; the location, duration, frequency, and intensity of the symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes; treatment, other than medication, used for relief of the symptoms; other measures the claimant uses to relieve the symptoms; and any other factors concerning the claimant's functional limitations due to the symptoms. *Id.*

A court's review of a credibility, or consistency, determination is "extremely deferential." *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013). On judicial review, courts "merely examine whether the ALJ's determination was reasoned and supported." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (citing *Jens v. Barnhart*, 347 F.3d 209, 213–14 (7th Cir. 2003)). "It is only when the ALJ's determination lacks any explanation or support that we will declare it to be patently wrong . . . and deserving of reversal." *Id.* at 413–14 (internal quotation marks and citations omitted).

At her hearing, Purpero testified that she has lower back pain that radiates to her glutes and left leg. (Tr. 46.) She indicated that the pain in both her back and left leg is constant. (Tr. 47–48.) Purpero also testified that she experiences a stabbing pain when pressure is applied to her left hand, along with swelling and tenderness in her wrist. (*Id.* at 62–63.) She stated that her left thumb made it difficult to complete activities like counting money, grabbing objects, or folding laundry. (*Id.*) Moreover, Purpero told the ALJ that she alternated using a thumb brace prescribed by her doctor and a commercial brace that she purchased herself, often to prevent putting extra pressure on her left hand. (Tr. 60–62.)

4

Case 2:20-cv-00010-NJ   Filed 02/11/21   Page 4 of 9   Document 16

The ALJ determined that, while Purpero's impairments could reasonably be expected to cause her alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the record evidence. (Tr. 23.) With respect to Purpero's lumbar spine, right hip, and left knee impairments, the ALJ noted that physical examinations throughout the relevant period showed reasonably good musculoskeletal and neurologic function and that Purpero reported significant benefit with medical care and treatment, including left knee and right hip replacements, epidural steroid injections, medication, and home exercise. (*Id.* at 23–24.)

As for Purpero's upper extremity impairments, the ALJ noted that although Purpero's medical records indicated a remote history of surgery for carpal tunnel syndrome, the record included no complaints of symptoms or treatment for carpal tunnel syndrome during the relevant period. (*Id.* at 24.) Further, the ALJ cited Purpero's admission at the hearing that her right middle finger trigger symptoms had been largely resolved with surgery. (*Id.*) And as for Purpero's left thumb arthritis and triggering of her left middle finger, the ALJ noted that the record reflected no complaints for eight months after her alleged onset date until May 2016; that after Purpero received injections in June 2016, she did not present again with symptoms for 18 months and reported that she received good relief from symptoms with the June 2016 injections; and that the results of a March 2016 consultative examination demonstrated good physical functioning of her bilateral upper extremities. (*Id.*)

Purpero argues that the ALJ misconstrued the evidence related to her use of pain medication in discounting her subjective symptoms. (Pl.'s Br. at 18.) In rejecting Purpero's allegations concerning her lumbar spine, right hip, and left knee impairments, the ALJ remarked that Purpero's "limited use of pain medication . . . suggests that [her] pain is not as

5

severe as alleged." (Tr. 23.) The ALJ reasoned that although Purpero was continuously prescribed Percocet throughout the relevant period, she "at times presented to pain management with approximately half or more than half of her pills remaining from the earlier refill." (*Id.*) Purpero asserts that the treatment notes cited by the ALJ from December 1, 2015, February 10, 2017, and December 17, 2017 fail to support the ALJ's finding. (Pl.'s Br. at 18.) For example, Purpero notes that there were only nineteen days between her receiving a month's worth of medication on November 12, 2015 and her December 1, 2015 appointment, which would explain the number of pills she had remaining. (*Id.* at 18–19.) Purpero offers similar explanations for the pills remaining at her February and December 2017 appointments. (*Id.* at 19.) She also cites treatment notes in the record where her doctor noted that her pain medication was being utilized as prescribed and that she had an appropriate amount of medication left. (*Id.*)

To be sure, the ALJ did cite Purpero's apparent sparse use of pain medication in finding that her alleged symptoms were not consistent with the record evidence. However, the decision demonstrates that the ALJ relied on much more evidence to conclude that Purpero received benefits from medical care and treatment, including that she had good results with left knee and right hip replacements, benefitted from injections for both her lumbar spine and left thumb symptoms, generally rated her pain as moderate, and stated that she required less treatment when she follow a home exercise regimen. (Tr. 24.) Additionally, the ALJ cited the results of a 2016 consultative examination, where Purpero exhibited "completely normal lumbar flexion and side bending, intact and symmetric deep tendon reflexes, and intact sensation," as well as "grip strength of 58 pounds on the right and 56 pounds on the left," and could perform activities like buttoning holes and tying shoes. (Tr.

6

24–25.) And although Purpero asserts that she took her pain medication as prescribed, she does not explain how acknowledgement of this fact by the ALJ would have compelled a finding of more restrictive upper extremity limitations, let alone a finding that she could not perform her past relevant work. The ALJ's reliance on Purpero's use of pain medication to discount her alleged symptoms does not warrant remand.

Similarly, Purpero argues that the ALJ discounted her subjective complaints based on the erroneous finding that, after receiving an injection for her left thumb arthritis pain in June 2016, she did not present again with symptoms until December 2017. (Pl.'s Br. at 19.) Contradicting this finding, Purpero says, are notes from treatment with an acupuncturist that include her complaints of thumb pain until November 2016, when she stated that her arthritis pain had stopped responding to treatment. (*Id.*) Purpero further argues that the December 2017 treatment note cited by the ALJ "alluded to the fact that [she] had received an injection much more recently" than December 2017, in June 2017. (*Id.*)

The ALJ did not misinterpret the evidence related to Purpero's treatment for her left thumb. In determining Purpero's RFC, the ALJ recounted the evidence related to her upper extremities:

> In May 2016, the claimant complained to her chiropractor of a three-day history of left thumb pain and bruising. She consulted her specialist, Dr. Shivaram, in June 2016, opting to receive an injection. Over the course of the next six months, she treated her left thumb pain with acupuncture, reporting a decreasing amount of effectiveness. The claimant eventually returned to Dr. Shivaram in December 2017, reporting left thumb pain and left middle finger triggering. She requested and received cortisone injections to both areas.

(Tr. 23.) Thus, the ALJ was aware of and acknowledged the treatment that Purpero received for her left thumb, including acupuncture. Further, in the December 2017 treatment note, Dr. Mysore Shivaram noted that Purpero had received a "cortisone injection approximately about

months [sic] ago with good relief of symptoms." (Tr. 551.) Dr. Shivaram's December 2017 note does not clearly indicate when Purpero last received an injection, and Purpero does not explain how going one year in between injections, as opposed to a year and a half, better substantiates her claims of disabling symptoms. Moreover, the December 2017 note indicated that the previous injections provided Purpero with good relief. For all of these reasons, the ALJ's subjective symptom evaluation was not patently wrong.

Purpero argues that the ALJ's misinterpretation of the evidence regarding her use of pain medication and frequency of medical treatment led to an overstatement of her ability to handle and finger in her RFC. (Pl.'s Br. at 20.) Purpero contends that, had the ALJ properly credited her subjective complaints, the RFC limitation to account for her left thumb arthritis would have been more restrictive, and she would have been found unable to perform her past relevant work as a buyer/planner as actually performed. (*Id.* at 20–21.) However, as explained above, the ALJ's subjective symptom evaluation was not patently wrong. The ALJ relied on various evidence that to conclude that Purpero's symptoms were not disabling. As such, Purpero's claim that the ALJ would have assigned greater restrictions in the RFC to account for her left thumb arthritis is unsupported by the record. The ALJ did not err in evaluating Purpero's subjective complaints or finding that she could perform her past relevant work.

## CONCLUSION

Purpero argues that the ALJ erred in assessing her subjective symptoms and finding that she could perform her past relevant work. I find that the ALJ's decision is supported by substantial evidence. Therefore, the Commissioner's decision is affirmed.

**ORDER**

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **AFFIRMED.**

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 11th day of February, 2021.

BY THE COURT

_____
NANCY JOSEPH
United States Magistrate Judge